UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH MUGNAI, LISA SCHMULDT, JEFF ARNOLD, MARYANN GOROG, CHRIS STEPONAITIS, COLE TAYLOR BANK, TERRY CAITHAMER, TIMOTHY J. BROWN, TODD JOHNSON, SHELLIE HYSLOP, DAVID ROLLER,<br><br>       Plaintiffs,<br><br>       v.<br><br>KIRK CORPORATION, PAUL ROSE,<br><br>       Defendants,<br><br>       v.<br><br>STACY BARHAM, LUIS ENCARNACION, MICHELE BLASCO, JOHN MUTUSTIK, HENRY THOMPSON, MARK RANK, ROBIN STRAUS, MICHAEL ALBACH, JOHN CARROLL, DAVID KIRK, DONALD KIRK, LON MARCHEL,<br><br>       Cross Defendants. | No. 11 C 01328<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

    This dispute, involving alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, has its origins in an adversary proceeding before the United States Bankruptcy Court for the Northern District of Illinois ("Bankruptcy Court"). *Cole Taylor Bank v. Kirk Corp. (In re Kirk Corp.)*, No. 09-A-788, 2010 WL 3523079,

at *1 (Bankr. N.D. Ill. Sept. 3, 2010). Two groups of Cross Plaintiffs[1] filed amended cross claims, alleging ERISA violations. (B.R. 184, First Am. Cross Claims; B.R. 193, First Am. Cross Claims; B.R. 223, Second Am. Cross Claims.)[2] Both groups of Plaintiffs are former employees of Kirk Corporation ("Kirk" or the "Company") and former participants of the Kirk Employee Stock Ownership Plan (the "Plan" or "Kirk ESOP"). (B.R. 184, First Am. Cross Claims ¶ 27; B.R. 193, First Am. Cross Claims ¶ 26; B.R. 223, Second Am. Cross Claims at 2, 6.) Group A Plaintiffs, Elizabeth Mugnai, Lisa Schmuldt, Jeff Arnold, MaryAnn Gorog, Chris Steponaitis (collectively, "Group A-1 Plaintiffs"), Terry Caithamer, Timothy J. Brown, Todd Johnson, Shellie Hyslop, and David Roller (collectively, "Group A-2 Plaintiffs"), asserted their cross claims against Kirk, Michael Albach, John Carroll, David Kirk, Donald Kirk, Lon Marchel, Paul Rose (collectively, "Trustees"), Stacy Barham, Luis Encarnacion, Michele Blasco, John Mutustik, Henry Thompson, Mark Rank, and Robin Straus (collectively, "Group B Plaintiffs"). (B.R. 184, First Am. Cross Claims ¶¶ 5, 12-24; B.R. 193, First Am. Cross Claims

---

[1] For ease of reference, the Court will refer to the Cross Plaintiffs as Plaintiffs throughout this opinion.

[2] Citations to (R.) refer to the record number that a document is assigned on the docket for this case. Citations to (B.R.) refer to the record number that a document was assigned on the docket for the adversary proceeding in the Bankruptcy Court.

¶¶ 5, 12-24.)[3]  Group B Plaintiffs also filed amended cross claims against Kirk, the Kirk ESOP, and the Trustees.  (B.R. 223, Second Am. Cross Claims at 3-5.)[4]

On February 25, 2011, Group A-1 Plaintiffs filed a motion to withdraw the reference to the underlying adversarial proceeding, which was granted.  (R. 1, Mot. Withdraw; R. 14, Min. Entry.)  Presently before the Court is the Kirk ESOP's and the Trustees' motion to dismiss all claims alleged against them by Group A and Group B Plaintiffs pursuant to Federal Rule of Civil Procedure 12(b)(6).  (R. 23, Defs.' Mot.)  For the reasons stated below, the motion to dismiss is granted in part and denied in part.

## RELEVANT FACTS

The Kirk ESOP is "a stock bonus plan under Section 401(a) of the Internal Revenue Code (the "Code") and an employee stock ownership plan under Section 4975(e)(7) of the

---

[3]  Because Group A-1 and Group A-2 Plaintiffs' cross claims are not substantively different, the Court treats them as the same and will cite only to B.R. 193 when referring to Group A Plaintiffs' cross claims.  (*See* B.R. 184, First Am. Cross Claims; B.R. 193, First Am. Cross Claims.)

[4]  For purposes of this opinion's caption, the Court has used the caption appearing on the CM-ECF docket.  As evidenced by the complicated procedural history of the case, however, the Court notes that the Caption does not accurately reflect the parties' positions.

Code." (R. 24-1, Kirk ESOP Docs. at 4.)[5] Under the terms of the Kirk ESOP, employees

accumulated shares of Kirk stock that were to be distributed to them when their employment

with Kirk terminated. (*Id.* at 27, § 12.) The distribution of an employee's stock was to "be made

in whole shares of Company Stock, cash or a combination of both, as determined by the Plan

Administrator." (*Id.* at 69-70, § 14.1.) Under the December 2002 amendment to the Plan, Kirk

was designated as the Plan Administrator, "for purposes of the reporting and disclosure

requirements of ERISA and the Code." (*Id.* at 72, § 17.6.) The Kirk ESOP further provided that

Company Stock could be "distributed subject to the requirement that it be immediately resold to

the Company." (*Id.* at 70, § 14.2.) In addition, Section 15.2 of the Kirk ESOP provided

participants with a "Put Option" that allowed participants "to sell such Company Stock to the

Company at any time during two option periods, at the then Fair Market Value." (*Id.* at 34-35, §

15.2.) This provision of the Kirk ESOP further provided that Kirk "may allow the Trustee to

purchase shares of Company Stock tendered to the Company under a put option." (*Id.*) The

---

[5] Plaintiffs included an unsigned and undated copy of the Kirk ESOP with their cross claims that appears to have been superseded. (B.R. 193-1, Superseded Kirk ESOP Docs.; B.R. 223-1, Superseded Kirk ESOP Docs.) In their motion to dismiss, Defendants included a signed and dated copy of the Kirk ESOP, along with several amendments to the Kirk ESOP and a certification attesting to the accuracy and completeness of the Plan documents. (R. 24-1, Kirk ESOP Docs.) Generally, when ruling on a Rule 12(b)(6) motion to dismiss, a court may only consider a plaintiff's complaint. *Rosenblaum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). Pursuant to Federal Rule of Civil Procedure 10(c), written instruments that are attached as exhibits to a pleading are a part of the pleading, and Seventh Circuit precedent makes clear that Rule 10(c) includes documents attached to a motion to dismiss that "are referred to in the plaintiff's complaint *and* are central to his claim." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Because the Plan documents are referred to in Plaintiffs' cross claims and are central to their claims, and because the Plan documents provided by Plaintiffs appear outdated and Plaintiffs fail to dispute the accuracy of the Plan documents submitted by Defendants, the Court relies upon those Plan documents when discussing the terms of the Kirk ESOP.

payment for any Company Stock sold under the Put Option could be "made in a lump sum or in substantially equal, annual installments over a period not exceeding five years, with adequate security provided and interest payable at a reasonable rate on any unpaid installment balance (as determined by the Company or the Trustee)." (*Id.*)

Group A Plaintiffs terminated their employment at Kirk at various times between 2004 and 2007, (B.R. 193, First Am. Cross Claims ¶ 26), whereas Group B Plaintiffs terminated their employment at Kirk at various times between 2006 and 2008. (B.R. 223, Second Am. Cross Claims at 6.) Plaintiffs allege that after receiving their distribution of Company Stock, they sold their Company Stock back to Kirk through the exercise of the Put Option. (B.R. 193, First Am. Cross Claims ¶ 27; B.R. 223, Second Am. Cross Claims at 13, 16.) Rather than paying each Plaintiff in one lump sum, Kirk elected to pay each Plaintiff over installments. (B.R. 193, First Am. Cross Claims ¶ 28; B.R. 223, Second Am. Cross Claims at 13, 16.) In exchange, Plaintiffs allege that they each received an Installment Note ("Note") from Kirk and a Certificate of Participation in Escrow and Security Agreement ("Certificate"). (B.R. 193, First Am. Cross Claims ¶ 28, 32; B.R. 223, Second Am. Cross Claims at 13, 16.) The Notes were signed by Albach. (B.R. 184-2, Notes; B.R. 193-2, Notes; R. 38-4, Notes.)[6]

---

[6] Although Group B Plaintiffs did not include copies of the Notes they received as exhibits to their cross claims, Group B Plaintiffs did include, among other documents, copies of the Notes and Certificates in their Response. (R. 38-3, Certificates; R. 38-4, Notes.) As discussed in the preceding footnote, on a motion to dismiss, a Court in general may only consider the Plaintiff's complaint. Pursuant to Rule 10(c), written instruments attached to a motion to dismiss that "are referred to in the plaintiff's complaint *and* are central to his claim" may also be considered. *Wright*, 29 F.3d at 1248. This rule "logically extends to documents attached to a plaintiff's response." *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010) (citing *Krok v. Burns & Wilcox, Ltd.*, No. 98-5902, 1999 WL 262125, at *6 (N.D. Ill. Apr. 16, 1999)). Because the Notes and Certificates were referred to in Group B Plaintiffs' cross claims and these documents are central to Group B Plaintiffs' claims, the Court considers these documents.

The Notes provided to Plaintiffs were secured by an Escrow and Security Agreement (the "Escrow Agreement") entered into by Kirk, Cole Taylor Bank ("Cole Taylor"), as escrow agent, and participants receiving a Certificate. (B.R. 193, First Am. Cross Claims ¶ 31; B.R. 184-3, Escrow Agmt.; B.R. 193-4, Escrow Agmt.; B.R. 223, Second Am. Cross Claims at 13; B.R. 223-2, Escrow Agmt.) Pursuant to the Escrow Agreement, Kirk agreed to "deposit a Letter of Credit . . . in the amount of the total balance due on all Notes in escrow for the benefit of each Participant." (B.R. 184-3, Escrow Agmt.; B.R. 193-4, Escrow Agmt.; B.R. 223-2, Escrow Agmt.)

At the time Group A Plaintiffs received their Notes, Kirk increased the amount of the Letter of Credit to equal the unpaid principal amounts owed to each Group A Plaintiff. (B.R. 193, First Am. Cross Claims ¶¶ 33-34.) After Group A Plaintiffs received their adequately secured Notes, Kirk issued additional Notes and secured them with the same Letter of Credit, but failed to increase the amount of the Letter of Credit to securitize the Notes issued to Group B Plaintiffs. (*Id.* ¶ 35.) According to Group A Plaintiffs, at the time Group B Plaintiffs received their Notes, Kirk's financial status "was materially different from . . . when the Notes were issued to Group A." (*Id.* ¶ 36.) Specifically, Group A Plaintiffs allege that Kirk "was experiencing substantial financial difficulties early in 2008." (*Id.* ¶ 56.) Group A Plaintiffs further assert that the Company Stock distributed to Group B Plaintiffs was purchased at more than its fair market value and that no valuations of Company Stock were performed close in time to when Kirk purchased Group B Plaintiffs' Company Stock. (*Id.*) According to Group B Plaintiffs, they were repeatedly told by the Trustees that the Notes were secured, even though the

Trustees knew that the Notes were not adequately secured. (B.R. 223, Second Am. Cross Claims at 6-7, 11).

Both Group A and B Plaintiffs also allege that the Trustees were fiduciaries of the Plan. (B.R. 193, First Am. Cross Claim ¶ 41; B.R. 223, Second Am. Cross Claims at 25-26, 30.) According to Plaintiffs, the Trustees breached their fiduciary duties to ensure that the Notes Plaintiffs received were adequately secured. (B.R. 193, First Am. Cross Claims ¶ 68; B.R. 223 Second Am. Cross Claims at 27, 31.) Group A Plaintiffs also allege that the Trustees breached their fiduciary duties to Group A because Kirk purchased Company Stock from Group B Plaintiffs for more than its fair market value. (B.R. 193, First Am. Cross Claims ¶ 67.) Group B Plaintiffs aver that the Trustees breached their fiduciary duties by failing to inform participants of the failure to adequately secure the Notes and instead telling participants otherwise, by allowing Group B Plaintiffs to sign the Escrow Agreement when the Trustees knew the Notes would not be adequately secured, and by allowing Kirk to purchase Company Stock that they "knew or reasonably should have known would be rendered worthless by the imminent bankruptcy" of Kirk. (B.R. 223, Second Am. Cross Claims at 27-28, 32.)

Finally, as relevant here, although Kirk was designated as the Plan Administrator, Section 17 of the Plan, as amended in December 2002, provides that, "[t]he Plan will be administered by one or more Trustees appointed by the Board of Directors to serve at its pleasure." (R. 24-1, Kirk ESOP Docs. at 71, § 17.) Under the terms of the Plan, a Trustee was defined as "[t]he Trustee (and any successor Trustees) appointed by the Board of Directors to hold and invest the Trust Assets." (*Id.* at 66, § 2.38.) Additionally, Section 17.2 of the Plan, as amended in December 2002, made clear that Kirk was the named fiduciary "with authority to

7

control and manage the operation and administration of the Plan." (*Id.* at 71, § 17.2.) As the named fiduciary, Kirk had "all powers necessary to enable it to administer the Plan in accordance with its provisions, including . . . construing and interpreting the Plan and adopting rules for administration of the Plan that are consistent with the terms of the Plan documents and of ERISA and the Code[.]" (*Id.* at 71-72, § 17.3.)

## PROCEDURAL HISTORY

Kirk filed chapter 11 bankruptcy in May 2009. *Cole Taylor Bank*, 2010 WL 3523079, at *1. The case was converted to chapter 7 in October 2009. *Id.* In August 2009, Cole Taylor brought an interpleader action seeking relief and direction in connection with certain funds (the "Funds") it held in an escrow account ("Escrow Account") for the benefit of former participants in the Kirk ESOP. (*Id.*; B.R. 184, First Am. Cross Claims ¶ 1; B.R. 193, First Am. Cross Claims ¶1; B.R. 223, Second Am. Cross Claims at 2.) Group A and B Plaintiffs in this action initially presented their cross claims as part of their responsive pleading to Cole Taylor's interpleader action. (R. 1, Mot. Withdraw ¶ 3.) Both groups of Plaintiffs "filed cross claims against Kirk alleging breach of fiduciary duty under ERISA for Kirk's admitted failure to provide sufficient funding under a letter of credit" to satisfy both groups of Plaintiffs' claims. *Cole Taylor Bank*, 2010 WL 3523079, at *1. On September 3, 2010, the Bankruptcy Court issued a memorandum opinion granting Kirk's motion to dismiss Plaintiffs' initial cross claims against Kirk. *Id.*

On October 1, 2010, Group A-1 Plaintiffs filed their first amended cross claims and on October 19, 2010, Group A-2 Plaintiffs filed their first amended cross claims. (B.R. 184, First Am. Cross Claims; B.R. 193, First Am. Cross Claims.) Group A Plaintiffs assert their first and second cross claims against Group B Plaintiffs for divestiture of the amounts set aside in the

Escrow Account for Group A Plaintiffs, and for violation of Section 5-106(b) of the Illinois Uniform Commercial Code ("UCC"). (*Id.* ¶¶ 25-44.) In their third cross claim, Group A Plaintiffs bring claims pursuant to Sections 502(a)(1)(B) and 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(2), against Kirk and the Trustees for breaches of fiduciary duty. (*Id.* ¶¶ 45-74.) In this cross claim, Group A Plaintiffs also allege a claim for co-fiduciary liability pursuant to ERISA Section 405, 29 U.S.C. § 1105. (*Id.* ¶ 64.) Finally, in their fourth cross claim, Group A Plaintiffs, as an alternative to Count III, allege a restitution claim pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) against Kirk and the Trustees. (*Id.* ¶¶ 75-76.)

On November 11, 2010, Group B Plaintiffs filed their second amended cross claims alleging several claims against the Trustees, Kirk, and the Kirk ESOP. (B.R. 223, Second Am. Cross Claims.) In Count I, Group B Plaintiffs present a promissory estoppel claim pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), against the Trustees. (*Id.* at 6-8.) In Counts II, III, and IV, Group B Plaintiffs seek equitable enforcement of the Kirk ESOP's terms pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), against the Trustees, the Kirk ESOP, and Kirk, respectively. (*Id.* at 8-18.) In Count V and VI, Group B Plaintiffs bring claims under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), against the Kirk ESOP and Kirk, respectively, for failure to adequately secure the Notes. (*Id.* at 18-25.) Finally, in Counts VII and VIII, Group B Plaintiffs bring claims pursuant to Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), and Section 409 of ERISA, 29 U.S.C. § 1109, against the Trustees in their personal capacities for breach of their fiduciary duties of loyalty and prudence by failing to comply with the terms of the Kirk ESOP agreement. (*Id.* at 25-33.)

On February 25, 2011, Group A-1 Plaintiffs moved the Court to withdraw reference of the underlying adversarial action. (R. 1, Mot. Withdraw.) This Court granted that motion on April 4, 2011. (R. 14, Minute Entry.) Subsequently, on March 21, 2011, Kirk was "voluntarily dismissed from this action without prejudice and upon the basis that the ability of Plaintiffs to recover under a certain insurance policy issued to Kirk is unaffected." (R. 17, Joint Status Report at 1; R. 4, Not. Dismissal.)

On May 24, 2011, Group A and B Plaintiffs moved the Court to enter an order for the turnover of undisputed funds to both Group A and B Plaintiffs. (R. 28, Mot. Turnover Funds.) Plaintiffs indicated that upon the entry of the order, "a settlement agreement [would be] entered into by and between Group A and B [Plaintiffs]" and therefore the proposed order would constitute an agreed dismissal of counter-claims between Group A and B Plaintiffs. (*Id.* at 5.) The Court granted Plaintiffs' motion, and ordered Plaintiffs to submit a proposed order. (R. 30, Min. Entry.) Plaintiffs submitted a proposed order (R. 31, Proposed Order; R. 32, Proposed Order), which the Court signed on May 31, 2011, and entered on June 1, 2011. (R. 36, Order Turnover Funds; R. 35, Min. Entry.)

On May 17, 2011, the Kirk ESOP and the Trustees moved to dismiss all claims alleged against them by Group A and B Plaintiffs, arguing that Plaintiffs cannot state a cognizable claim under ERISA. (R. 23, Defs.' Mot.) In their supporting memorandum, Defendants present five arguments. First, Defendants argue that Plaintiffs fail to properly plead their Section 502(a)(1) benefits claims against either the Trustees or the Plan and that these claims fail because Plaintiffs received all benefits they were due under the Plan. (R. 24, Defs.' Mem. at 3.) Second, Defendants argue that Plaintiffs' Section 502(a)(2) breach of fiduciary duty claims against the

Trustees fail because: (1) Plaintiffs have not alleged any loss to the Plan from the Trustees' alleged breach; (2) Plaintiffs have not alleged any facts linking the Trustees' fiduciary obligations to the alleged wrongdoing; and (3) the Trustees' fiduciary duties ended when the Kirk ESOP made a full distribution to Plaintiffs. (*Id.* at 7-10.) Third, Defendants contend that the Seventh Circuit recognizes estoppel claims with respect to ERISA plans only in limited circumstances and that Group B Plaintiffs have not alleged the required elements for those rare cases where estoppel is recognized. (*Id.* at 10-11.) Fourth, Defendants argue that Plaintiffs' other Section 502(a)(3) claims fail because the relief Plaintiffs seek is not equitable in nature. (*Id.* at 12-15.) Finally, Defendants contend that Group A Plaintiffs' claims for co-fiduciary liability under Section 405 fail because they are inadequately pled. (*Id.* at 15.)

Both Groups of Plaintiffs submitted responses to Defendants' motion to dismiss. (R. 34, Group A Pls.' Resp.; R. 38, Group B Pls.' Resp.; R. 43, Group A Pls.' Supp. Resp.) On September 7, 2011, Defendants filed a notice of supplemental authority. (R. 50, Not. Suppl. Auth.) Thereafter, Group B Plaintiffs sought, and the Court granted, leave to respond to arguments raised in Defendants' notice of supplemental authority. (R. 51, Mot. Leave; R. 53, Min. Entry.)

## LEGAL STANDARDS

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Id.* Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain

statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

## ANALYSIS

The Kirk ESOP, as a qualified employee stock ownership plan ("ESOP")[7], must comply with the requirements of Section 409(h), among other sections, of the Code. 26 U.S.C. § 401(a)(23); 26 U.S.C. § 4975(e)(7). A plan meets the requirements of Section 409(h) if, as relevant here, "a participant who is entitled to distribution from the plan–(A) has a right to demand that his benefits be distributed in the form of employer securities, and (B) if the employer securities are not readily tradable on an established market, has a right to require that the employer repurchase employer securities under a fair valuation formula." 26 U.S.C. §

---

[7] An ESOP is an individual account plan "which is a stock bonus plan which is qualified, or a stock bonus and money purchase plan both of which are qualified, under section 401 of Title 26, and which are designed to invest primarily in qualifying employer securities, and which meets such other requirements as the Secretary of the Treasury may prescribe by regulation." 29 U.S.C. § 1107(d)(6); 26 U.S.C. § 4975(e)(7). ERISA further defines an "individual account plans" as a plan "which is a stock bonus plan which is qualified, or a stock bonus and money purchase plan both of which are qualified, under section 401 of Title 26, and which are designed to invest primarily in qualifying employer securities, and which meets such other requirements as the Secretary of the Treasury may prescribe by regulation." 29 U.S.C. § 1107(d)(6); 26 U.S.C. § 4975(e)(7).

409(h)(1)(A)-(B). An employer satisfies Section 409(h)(1)(B) where it provides a participant with a put option. 26 U.S.C. § 409(h)(4). And, where "an employer is required to repurchase employer securities which are distributed to the employee as part of a total distribution, the requirements of [Section 409(h)(1)(B)] shall be treated as met if–(A) the amount to be paid for the employer securities is paid in substantially equal periodic payments (not less frequently than annually) over a period [between 30 days and 5 years], and (B) there is adequate security provided and reasonable interest paid on the unpaid amounts referred to in [Section 409(h)(5)(A)]." 26 U.S.C. § 409(h)(5).

ERISA is a "'comprehensive and reticulated statute' with 'carefully integrated civil enforcement provisions[.]" *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 258 (2008) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)). In particular, ERISA allows plan participants to bring a civil action pursuant to certain of these civil enforcement provisions. 29 U.S.C. § 1132. Participants are defined, in relevant part, as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7).[8] Plaintiffs here bring forth claims pursuant to Sections 502(a)(1)(B), 502(a)(2), and 502(a)(3) of ERISA. 29 U.S.C. § 1132(a).

I.      **Plaintiffs' Section 502(a)(1)(B) claims**

      A.      **Whether Group A Plaintiffs have sufficiently alleged a Section 502(a)(1)(B) claim**

---

[8] Defendants do not contest that Plaintiffs qualify as participants.

Pursuant to Section 502(a)(1)(B) of ERISA, a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). In their third cross claim, Group A Plaintiffs assert a Section 502(a)(1)(B) claim for benefits against the Trustees. (B.R. 193, First Am. Cross Claims ¶ 72.) Defendants argue that Group A Plaintiffs' Section 502(a)(1)(B) claims should be dismissed because benefit claims are properly asserted only against a plan, and therefore the benefits claim against the Trustees fails. (R. 24, Defs.' Mem. at 3.)

The Seventh Circuit has continually noted that Section 502(a)(1)(B) suits for benefits are generally limited to suits against the plan, and not to trustees. *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 674 (7th Cir. 2004) (citing *Neuma, Inc. v. AMP, Inc.* 259 F.3d 864, 872 n.4 (7th Cir. 2001)). In limited circumstances, however, individuals have been permitted to sue a party other than the plan in a claim for ERISA benefits. Specifically, the Seventh Circuit has recognized exceptions to its general rule where: (1) the employer and plans are closely intertwined; or (2) the ERISA plan documents refer to the employer and plan interchangeably. *Mein v. Carus Corp.*, 241 F.3d 581, 584-85 (7th Cir. 2001) (allowing plaintiff to sue his employer to recover ERISA benefits because the employer and the plan were closely intertwined); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997) (permitting a plaintiff to sue employer to recover ERISA benefits because the plan documents referred to the employer and plan interchangeably). In essence, these two exceptions allow a plaintiff to proceed against a party other than the plan–specifically the employer–when

14

the identity of the plan is not discernable because of the close relationship between the employer and the plan.

Under the Seventh Circuit's general rule, Group A Plaintiffs' claim for benefits under Section 502(a)(1)(B) is barred because the Trustees are not the Plan and are therefore not the proper defendants in Section 502(a)(1)(B) claim for benefits. The exceptions the Seventh Circuit has recognized in *Mein* and *Riordan* do not apply because Group A Plaintiffs are not proceeding against Kirk, their former employer, but rather are suing the Kirk ESOP's Trustees. Because Group A Plaintiffs only assert their Section 502(a)(1)(B) claims against the Trustees and not the Kirk ESOP, the Court dismisses Group A Plaintiffs' Section 502(a)(1)(B) claims in their third cross claim.

**B.     Whether Group B Plaintiffs have sufficiently alleged a Section 502(a)(1)(B) claim**

Pursuant to Section 502(a)(1)(B) of ERISA, a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).  In Count V, Group B Plaintiffs assert a Section 502(a)(1)(B) claim for benefits against the Kirk ESOP.  (B.R. 223, Second Am. Cross Claims at 18-21.)  Group B Plaintiffs allege that the Kirk ESOP "violated the terms of the ESOP Agreement by failing to adequately secure all of the outstanding installment notes" that Plaintiffs received in exchange for selling their Company Stock back to Kirk.  (*Id.* at 19-20.)  Specifically, Group B Plaintiffs allege that the Kirk ESOP "issued installment notes totaling $1,788,887 while the Letter of Credit provided funds totaling $843,702."  (*Id.* at 20.)  Therefore, according to Group B Plaintiffs, the Kirk ESOP "violated the [Kirk] ESOP Agreement by failing to secure $945,185 worth of the

15

installment notes" and as a result, Group B Plaintiffs "did not receive a full distribution on the installment notes for their validly repurchased stock." (*Id.*)

Defendants argue that Plaintiffs' benefits claims fail because they have not alleged any "facts to support their claim that moneys owed by Kirk under promissory notes issued after participants received Plan distributions are equivalent to benefits owed by the Plan." (R. 24, Defs.' Mem. at 4.) Defendants further argue that the benefit claims fail "because Plaintiffs received all of the benefits they were due under the Plan[,]" and "even if Plaintiffs were somehow able to state a claim for benefits, there would be nothing for them to recover, because all of the stock in the Plan was distributed and the Plan is now terminated." (*Id.* at 4-5.) In response, Group B Plaintiffs argue that they "have not received the benefits that they were promised." (R. 38, Group B Pls.' Resp. at 4.) According to Group B Plaintiffs, "[t]he real benefits the Plaintiffs were supposed to receive was the fair market value of the stock when the Plaintiffs were obligated to immediately sell back this stock to Kirk under the Put Option." (*Id.* at 5.) Group B Plaintiffs further argue that because the Notes were supposed to be adequately secured, "the 'benefits' due to [them] were Company stock with adequate security." (*Id.*) According to Group B Plaintiffs, they "did not receive their full distribution under the ESOP as the Installment Notes were never adequately secured in violation of ERISA and the Internal Revenue Code." (*Id.*)

While the parties focus their arguments on whether adequate security constituted a "benefit" to the Participants under the terms of the Kirk ESOP, the Court need not resolve this issue at this time because the Court finds that the Plan terms required Kirk to provide adequate security with the Notes given to Plaintiffs. Specifically, pursuant to Section 15.2 of the Kirk

ESOP, "[t]he payment for any Company Stock sold under a put option may be made in a lump sum or in substantially equal, annual installments over a period not exceeding five years, *with adequate security provided* and interest payable at a reasonable rate on any unpaid installment balance (as determined by the Company or the Trustee)." (R. 24-1, Kirk ESOP Docs. at 34-35, § 15.2) (emphasis added). In other words, under the terms of the Kirk ESOP, the Notes were supposed to be adequately secured. Accordingly, the Court finds that Group B Plaintiffs have properly stated a claim under Section 502(a)(1)(B) to enforce their rights under the terms of the Kirk ESOP. *See Cole Taylor Bank*, 2010 WL 3523079 at *5 (rejecting Kirk's argument that plaintiffs did not have a viable claim under § 502(a)(1)(B) because, according to Kirk, "they got all the benefits to which they were entitled under the plan" and noting instead that, "while the cross-plaintiffs may have gotten all the stock to which they were entitled from the ESOP trust that held the stock, the plan also required Kirk to provide adequate security if it chose to make installment payments under the put option. This is clearly an obligation that Kirk owed under the plan . . . so the cross-plaintiffs may have a viable claim to enforce their rights under the plan under § 502(a)(1)(B).").

Seeking to avoid this result, Defendants argue that "even if Plaintiffs were somehow able to state a claim for benefits, there would be nothing for them to recover, because all of the stock in the Plan was distributed and the Plan is now terminated." (R. 24, Defs.' Mem. at 5.) Plaintiffs fail to respond to this argument. Nonetheless, the Court notes that ERISA contains precise mechanisms for terminating a plan and the current record contains no evidence to support Defendants' contention that the plan has been properly terminated as required by ERISA. *See* 29 U.S.C. § 1341. For this reason, the Court rejects Defendants' arguments that

17

Plaintiffs cannot recover against the plan. *See In re New Center Hospital*, 200 B.R. 592 (E.D. Mich. 1996) (finding that plan was not terminated when debtor stopped making payments into the plan, where no evidence was presented that plan administrator had begun necessary proceedings to terminate the plan as required by ERISA). Accordingly, the Court declines to dismiss Count V of Group B Plaintiffs' cross claims.

## II.     Plaintiffs' Section 502(a)(2) claims

Both Group A and B Plaintiffs assert breach of fiduciary duty claims against the Trustees pursuant to Section 502(a)(2) of ERISA. (B.R. 193, First Am. Cross Claims ¶¶ 45-74; B.R. 223, Second Am. Cross Claims at 25-33.) Section 502(a)(2) allows a participant to bring a civil action "for appropriate relief" under Section 409 of ERISA. 29 U.S.C. § 1132(a)(2). Section 409 of ERISA makes any person who is a fiduciary with respect to a plan personally liable for breaches of fiduciary duty. 29 U.S.C. § 1109(a). Specifically, Section 409 provides, in part, that any plan fiduciary who breaches his fiduciary duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach[.]" 29 U.S.C. § 1109(a). As relevant here, to prevail on a Section 502(a)(2) claim, a plaintiff must properly allege both that the defendant is a fiduciary and that there was as loss to the Plan caused by a breach.

### A.     Whether Plaintiffs have sufficiently alleged that the Trustees were fiduciaries

ERISA "provides that not only the persons named as fiduciaries by a benefit plan, but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets, is an ERISA fiduciary." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (citing 29 U.S.C. § 1102(a) and 29 U.S.C. § 1002(21)(A)). Additionally, "a person deemed to be a fiduciary is not a fiduciary for every purpose but only to the extent that he

performs one of the described functions." *Klosterman v. W. General Management, Inc.*, 32 F.3d 1119, 1122 (7th Cir. 1994). Because an individual who is a fiduciary with respect to one aspect of the plan may not be a fiduciary regarding other aspects of the plan, the Supreme Court has held that "[i]n every case charging breach of ERISA fiduciary duty, then, the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

In their third cross claim, Group A Plaintiffs bring a Section 502(a)(2) claim against the Trustees. (B.R. 193, First Am. Cross Claims ¶ 71.) Group A Plaintiffs allege that pursuant to Sections 17.1 and 17.3 of the Plan, the Trustees administered the Kirk ESOP and that they had all powers necessary to enable them to administer the Kirk ESOP. (B.R. 193, First Am. Cross Claims ¶ 46.) Group A Plaintiffs further aver that the Trustees "are fiduciaries" as defined by ERISA "because they exercise discretionary authority and control respecting management of the ESOP and management and disposition of its assets." (*Id.* ¶ 62.) Pursuant to Section 405 of ERISA, Group A Plaintiffs also allege that the Trustees are co-fiduciaries with Kirk. (*Id.* ¶ 64.)

In Counts VII and VIII, Group B Plaintiffs' assert Section 502(a)(2) claims against the Trustees. (B.R. 223, Second Am. Cross Claims at 25-33.) According to Group B Plaintiffs, Count VII is brought "on behalf of the [Kirk ESOP] and for the benefit of the [Kirk ESOP]." (*Id.* at 26.) In both Counts VII and VIII, Group B Plaintiffs allege that pursuant to Section 17.1 of the Plan, the Trustees "were named fiduciaries under the terms of the Plan and also exercised discretionary control over the terms of the [P]lan and the administration of the [P]lan." (*Id.* at 25-26, 30.)

19

The Court concludes that Plaintiffs have not sufficiently alleged that the Trustees were fiduciaries. First, Plaintiffs rely upon an outdated version of the Kirk ESOP in making their allegations and to support their arguments that the Trustees were named fiduciaries of the Kirk ESOP. (B.R. 193-1, Superseded Kirk ESOP Docs.; B.R. 223-1, Superseded Kirk ESOP Docs.; R. 38, Group B Pls.' Resp. at 6.) Section 17.1 of the outdated version of the Plan stated that the Trustees were the named fiduciaries. (B.R. 193-1, Superseded Kirk ESOP Docs. at 35, § 17.1.) Under Section 17.2 of the Kirk ESOP, as amended in December 2002, however, the Company, *i.e.*, Kirk, was the named fiduciary. (R. 24-1, Kirk ESOP Docs. at 71, § 17.2.) *See also Cole Taylor Bank*, 2010 WL 3523079, at *4 (noting that "Kirk is the named fiduciary under the 2002 amendment to the plan so there is no doubt that it is a fiduciary under § 409 of ERISA for many purposes.").

Additionally, while Section 17.3 of the superseded version of the Plan stated that "[t]he Trustee shall have all powers necessary to enable it to administer the Plan . . . in accordance with [its] provisions[,]" (B.R. 193-1, Superseded Kirk ESOP Docs. at 36), Section 17.3, as amended in December 2002, gave those powers to the named fiduciary. (R. 24-1, Kirk ESOP Docs. at 71-72, § 17.3.) Therefore, as the named fiduciary, Kirk had "all the powers necessary to enable it to administer the Plan in accordance with its provisions," including the power to "constru[e] and interpret[] the Plan and adopt[] rules for administration of the Plan that are consistent with the terms of the Plan documents and of ERISA and the Code[.]" (R. 24-1, Kirk ESOP Docs. at 71-72, § 17.3(g).) Kirk also had the power to "determin[e] the amount of benefits payable to a Participant (or Beneficiary), and the time and manner in which such benefits are to be paid." (*Id.* at 71, § 17.3(c).) Therefore, contrary to Plaintiffs' allegations and arguments, the Trustees were

20

not named fiduciaries under the terms of the Kirk ESOP, nor did the Plan give the Trustees this power.

Second, Plaintiffs have not sufficiently alleged that the Trustees exercised discretionary control or authority over the Plan's management, administration, or assets. *Mertens*, 508 U.S. at 251. Defendants argue that Plaintiffs' Section 502(a)(2) claims should be dismissed because Plaintiffs have failed to allege sufficient "facts linking the Trustees' fiduciary obligations to the specific act of securing promissory notes issued by Kirk or ensuring that Kirk purchased stock at fair market value." (R. 24, Defs.' Mem. at 8.) The Court agrees. Group A Plaintiffs allege that the Trustees were fiduciaries because "they exercise discretionary authority and control respecting management of the ESOP and the management and disposition of its assets" (B.R. 193, First Am. Cross Claims ¶ 62.) Group B Plaintiffs allege that the Trustees "exercised discretionary control over the terms of the plan and the administration of the plan." (B.R. 223, Second Am. Cross Claims at 25-26, 30.) Aside from these conclusory allegations, Plaintiffs fail to allege any facts to support their contention that the Trustees exercised discretionary authority or control over the management of the Plan, the disposition of the Plan assets, or the administration of the Plan as required by Section 3(21)(A) of ERISA. 29 U.S.C. § 1002(21)(A). Specifically, Plaintiffs do not allege any actions undertaken by the Trustees that exhibit the Trustees' discretionary authority or control, nor do they allege how the Trustees could exercise discretion or control over Kirk to ensure that Kirk provided adequate security for the stock purchases or to ensure that Kirk paid the fair market value of the Company Stock to Group B Plaintiffs.

While Group A Plaintiffs allege that Section 15.2 of the Plan required "Kirk and/or the Trustees to ensure there be 'adequate security provided and interest rate payable at a reasonable rate on any unpaid installment balance...'[,]" (B.R. 193, First Am. Cross Claims ¶ 47), Group A Plaintiffs read too much into this provision. Although Section 15.2 provides that "[t]he Company may allow the Trustee to purchase shares of Company Stock tendered to the Company under a put option[,]" the same section then places the security obligation upon whichever entity purchased the stock from the participants. (R. 24-1, Kirk ESOP Docs. at 34-35, § 15.2.) Here, it was Kirk that purchased the Company Stock from the Plaintiffs and therefore Kirk had the obligation to provide adequate security once it elected to pay for that stock in annual installments over the course of five years. Accordingly, the Court finds that Plaintiffs' cross claims do not provide sufficient factual allegations that the Trustees were fiduciaries so as to satisfy *Iqbal*. 129 S.Ct. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 512-13 (7th Cir. 2009) (affirming district court's dismissal of cross-claimant's amended cross-complaint where cross-complaint offered only conclusory statements that cross-defendant was a fiduciary, had breached its fiduciary duties, had caused a loss to the plan, and did not explain how the alleged breach of duty imposed a loss to the Plan); *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 475 (7th Cir. 2007) (affirming dismissal of complaint alleging breach of fiduciary duty where Carpenters lacked ultimate discretionary authority to administer programs under the plan).

Finally, Group A Plaintiffs' reliance on this Court's prior opinion in *George v. Kraft Foods Global, Inc.*, 674 F. Supp. 2d 1031, 1049-50 (N.D. Ill. 2009), is unavailing. (R. 34, Group

A Pls.' Resp. at 12-13.) While the Court recognizes that "[b]ecause the determination of whether a person behaved in a fiduciary capacity often involves factual issues, courts . . . frequently decline[] to decide a defendant's fiduciary status on a motion to dismiss[,]" this does not mean that Plaintiffs are liberated of their duty to allege facts sufficient to state a plausible claim for relief. Group A Plaintiffs argue that they have "met the pleading standard applicable to this case and [have] alleged provisions of the ESOP and applicable law and facts, which if taken as true . . . demonstrate that Group A should be made whole for the entire purchase price of their Kirk stock." (*Id.* 13.) The Court finds, however, that in addition to relying upon an outdated version of the Plan to argue that the Trustees were named fiduciaries,[9] Plaintiffs have only alleged that the Trustees were fiduciaries in the most conclusory manner.[10]

### B.     Whether Plaintiffs have alleged a loss to the Plan

Even if Plaintiffs had sufficiently alleged that the Trustees were acting as fiduciaries, the Court finds that their claims would still fail because they have not alleged that the Plan suffered losses as a result of the alleged breaches of fiduciary duty. Again, Section 502(a)(2) allows a participant to bring a civil action "for appropriate relief" under Section 409 of ERISA, 29 U.S.C. § 1109. 29 U.S.C. § 1132(a)(2). Section 409 of ERISA provides that any plan fiduciary who breaches his fiduciary duties "shall be personally liable to make good to such plan *any losses to*

---

[9] The Court notes that Plaintiffs should have been aware of the December 2002 amendments to the Plan in drafting their first and second amended cross claims, as the Bankruptcy Court clearly relied on these amendments in reaching its decision, yet Plaintiffs failed to take these amendments into account before filing amended cross claims. *See Cole Taylor Bank*, 2010 WL 3523079, at *4.

[10] Because the Court finds that Plaintiffs have not sufficiently alleged that the Trustees were fiduciaries, the Court declines to address Defendants' arguments that Group A Plaintiffs' co-fiduciary claims are inadequately pled.

*the plan* resulting from each such breach[.]" 29 U.S.C. § 1109(a) (emphasis added). And, the Supreme Court has held that the language in Section 409 limiting a fiduciary's liability to "losses to the plan" limits Section 502(a)(2) actions to claims for losses to a plan. *Russell*, 473 U.S. at 142 ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."). Accordingly, a loss to the plan is a necessary element of any breach of fiduciary duty claim. *See Sharp Elecs. Corp.*, 578 F.3d at 512 (noting that to survive a motion to dismiss, Plaintiff must allege, in part, "a cognizable loss to the plan flowing from [the] breach" of fiduciary duty).

With respect to losses Plaintiffs experienced, Group A Plaintiffs allege that they "are seeking recovery for fiduciary breaches that effectively impaired the value of plan assets that had been reflected in their individual accounts." (*Id.* ¶ 71.) Defendants argue that this allegation is essentially an admission on the part of Group A Plaintiffs that "no assets were impaired *while a part of the Plan*." (R. 24, Defs.' Mem. at 6.)

Group B Plaintiffs allege that the Trustees "damaged the ESOP by their multiple breaches of fiduciary duty of loyalty and prudence[,]" that the Trustees "caused a loss to the ESOP[,]" that the "Plan suffered a loss when the [T]rustees failed to purchase the stock of [Group B Plaintiffs] in accordance with the terms of the ESOP Agreement[,]" and that the "Plan suffered a loss when stock that was inadequately secured was allowed to be sold to the ESOP." (B.R. 223, Second Am. Cross Claims at 28-29.) Defendants argue that Group B Plaintiffs do "not allege any facts to show how Kirk's failure to provide adequate security to them individually–after their stock was distributed–could have damaged or caused a loss to the Plan."

24

(R. 24, Defs.' Mem. at 6.) According to Defendants, "Plaintiffs could not possibly allege any impairment to their accounts *while they were held in the Plan*, because when Plaintiffs exercised the Put Option and Kirk issued promissory notes, these former participants *no longer had accounts in the Plan*." (*Id.*)

The Court agrees that Plaintiffs have not alleged a "loss to the Plan." Plaintiffs acknowledge that they received a distribution of all Company Stock they were due. Upon receiving their distributions, Plaintiffs no longer held active accounts in the Kirk ESOP and the adequate security requirement imposed upon Kirk came into effect only after Plaintiffs received a complete distribution of their Company Stock from their individual accounts. Accordingly, the Court finds that Plaintiffs have not alleged a loss to the Plan as a result of the Trustees' alleged failure to adequately secure the Notes Plaintiffs received.

Seeking to avoid this outcome, Plaintiffs rely on *LaRue* and *Rogers v. Baxter International, Inc.*, 521 F.3d 702 (7th Cir. 2008), to argue that participants in a defined contribution plan may sue under Section 502(a)(2) to obtain relief for individual losses attributable to a fiduciary's breach of duty. (R. 34, Group A Pls.' Resp. at 11; R. 38, Group B Pls.' Resp. at 9.) The problem with Plaintiffs' argument, however, is that they equate loss to an individual with loss to plan assets in an individual account. Under the Supreme Court's precedent, only the former is compensable. The Supreme Court in *LaRue* explicitly held "that although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of *plan assets* in a participant's individual account." 552 U.S. at 256 (emphasis added). In *Rogers*, the Seventh Circuit, relying on both *Russell* and *LaRue*, allowed participants of a defined-

25

contribution account to obtain relief pursuant to Section 502(a)(2) claims "if losses to *an account* are attributable to a pension plan fiduciary's breach of duty *owed to a plan*." 521 F.3d at 705 (emphasis added). Accordingly, *Baxter* only allows recovery for losses to individual accounts under a plan and not for individual losses distinct from plan injuries, as Plaintiffs argue.

Plaintiffs also rely on *Peabody v. Davis*, 636 F.3d 368 (7th Cir. 2011), to argue that the Seventh Circuit has "recognized that participants in a defined contribution plan may bring suit for breaches that affect individual accounts." (R. 38, Group B Pls.' Resp. at 9; R. 34, Group A Pls.' Resp. at 11.) Plaintiffs are correct that in *Peabody*, the Seventh Circuit relied on *LaRue* to state that "a participant in a defined contribution plan may bring a § 502(a)(2) action for breach of fiduciary duty as to an individual account." *Id.* at 373. In the very next paragraph of its discussion, however, the Seventh Circuit also clarified that "[t]he remedy in an action for breach of fiduciary duty is for the fiduciary to 'make good' the *loss to the plan*." *Id.* (emphasis added). Accordingly, *Peabody* does not help Plaintiffs' assertions that they may recover for individual losses that are not losses to the Plan.

Finally, unlike plaintiffs in *LaRue*, *Rogers*, and *Peabody*, Plaintiffs are unable to allege a loss to the Plan as a result of a breach of fiduciary duty that occurred at a time when Plaintiffs were still active participants in the plan. Plaintiffs in *LaRue*, *Rogers*, and *Peabody* all brought suits for losses that occurred to their individual accounts while they were active participants in the plans therein at issue and while their accounts were still part of the plans. *See LaRue*, 552 U.S. at 250-51; *Rogers*, 521 F.3d at 703; *Peabody*, 636 F.3d at 371. The same can also be said of the plaintiffs in *Roth v. Sawyer-Cleator Lumber Co.*, which Group B Plaintiffs rely on. In *Roth*, the Eighth Circuit also looked to determine whether the plan itself had suffered a loss and

noted that under *Russell*, losses to individual beneficiaries were not actionable. 61 F.3d 599, 605 (8th Cir. 1995).

Alternatively, Group B Plaintiffs argue that the Kirk ESOP itself "suffered a loss by not receiving complete Company stock from Kirk." (R. 38, Group B Pls.' Resp. at 9.) According to Group B Plaintiffs, "[t]he Plaintiffs were supposed to receive a fair market value distribution of stock, and, therefore, since the stock was not backed with adequate security, the stock had de minimis value which is less than what the ESOP was supposed to receive in Company stock." (*Id.* at 9-10.) Contrary to Group B Plaintiffs' suggestions, however, it was the Company and not the Kirk ESOP that could purchase the Company Stock from participants. And, as Defendants emphasize, the obligation to provide adequate security arose only when Kirk issued the Notes in connection with the Put Option; Kirk did not owe any security obligation to the Plan. (R. 24-1, Kirk ESOP Docs. at 34-35, § 15.2.) The alleged breach of fiduciary duty impacted participants individually, and the Plan itself did not suffer any losses.

Finally, the Court notes that its reasoning is consistent with the Bankruptcy Court's memorandum opinion dismissing Plaintiffs' initial cross claims against Kirk. There, the Bankruptcy Court found that Plaintiffs "cannot allege an injury to the plan caused by the failure to provide adequate security that is required to state a claim for breach of fiduciary duty under § 502(a)(2)." *Cole Taylor Bank* , 2010 WL 3523079, at *5. In so holding, the Bankruptcy Court took into account the fact that Plaintiffs had acknowledged "that they were issued the stock to which they were entitled under the plan[,]" and that the crux of their claim was that Kirk failed to comply with the Put Option's requirement that the Notes Plaintiffs were given be adequately secured. *Id.* The Bankruptcy Court then noted that the adequate security requirement "came

into play *only after* they received the distribution of stock from the ESOP trust." *Id.* (emphasis added). According to the Bankruptcy Court, "Kirk's failure to provide adequate security caused no harm to the plan (or the trust that held stock for distribution under the plan). That failure impacted only the participants individually after they received their stock distributions from the plan." *Id.* Accordingly, because Plaintiffs failed to sufficiently allege that the Trustees were fiduciaries and that there was a loss to the Plan, the Court dismisses Plaintiffs' Section 502(a)(2) claims.

### III.  Plaintiffs' Section 502(a)(3) claims

Section 502(a)(3) allows a participant to bring a civil action "(A) to enjoin any act or practice" which violates certain portions of ERISA or the terms of the plan, or "(B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions [of portions of ERISA] or the terms of the plan[.]" 29 U.S.C. § 1132 (a)(3). The Supreme Court has interpreted the term "appropriate equitable relief in § 502(a)(3) as referring to those categories of relief that, traditionally speaking (i.e., prior to the merger of law and equity) were typically available in equity." *Cigna Corp. v. Amara*, 131 S.Ct. 1866, 1878 (2011) (internal quotation marks and citations omitted). Accordingly, an inquiry under Section 502(a)(3) "entails an analysis of what relief would have been '*typically* available in equity.'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 222 (2002) (Stevens, J. dissenting) (citing *Mertens*, 508 U.S. at 256).

Both Group A and B Plaintiffs bring claims pursuant to Section 502(a)(3) against the Trustees. (B.R. 193, First Am. Cross Claims ¶¶ 75-76; B.R. 223, Second Am. Cross Claims at 5-14.) The Court will consider each in turn.

28

## A.    Group A Plaintiffs' restitution claims

In their fourth cross claim, and as an alternative to their third cross claim, Group A Plaintiffs bring a restitution claim against the Trustees. (B.R. 193, First Am. Cross Claims ¶¶ 75-76.) Group A Plaintiffs seek "restitution on an equitable basis of the benefits that were taken away from them by the breaches of fiduciary duty by Kirk Corporation and the ESOP Trustees" pursuant to Section 502(a)(3). (*Id.* ¶¶ 75-76.) Specifically, Group A Plaintiffs ask the Court to order that the "Funds be paid to Group A, without set-off or reduction, in amounts reflected on [a certain attached exhibit]." (*Id.*) Defendants argue that Group A Plaintiffs' 502(a)(3) claims for restitution fail because the relief they seek is not equitable. (R. 24, Defs.' Mem. at 12-13.) In response, Group A Plaintiffs rely on *Clair v. Harris Trust and Savings Bank*, 190 F.3d 495 (7th Cir. 1999), and *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574 (7th Cir. 2000), to argue, in a single sentence, that former employees "expressly are within the scope of Section 502(a)(3)(B)(i) of ERISA if they are seeking restitution of the benefits that they were entitled to but did not receive because of a breach of trust (i.e., a breach of fiduciary duty)." (R. 34, Group A Pls.' Resp. at 11-12.) Since *Bowerman* and *Clair*, however, the Supreme Court has clarified the meaning of "other appropriate equitable relief" that is available under Section 502(a)(3), specifically examining the remedy of restitution. *See Knudson*, 534 U.S. at 213.

In *Mertens*, the Supreme Court stated in dicta that "appropriate equitable relief" under Section 502(a)(3) is limited to traditional equitable remedies such as awarding an injunction or restitution. 508 U.S. at 255-56. As the Seventh Circuit has explained, this language from *Mertens* has led parties to suggest that restitution is an exclusively equitable remedy. *Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 710 (7th Cir. 1999). In *Knudson*,

however, the Supreme Court examined the remedy of restitution under Section 502(a)(3)(B) and concluded that "not all relief falling under the rubric of restitution is available in equity." 534 U.S. at 213. Looking back to "the days of the divided bench," the Court noted that "'restitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case,' and whether it is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Id.* at 213 (quoting *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994)). The Supreme Court distinguished legal restitution from equitable restitution by explaining that ordinarily, equitable restitution takes "the form of a constructive trust or an equitable lien, where money or property identified as belonging . . . to the plaintiff could clearly by traced to particular funds or property in the defendant's possession." *Id.* The Supreme Court then clarified that, "where 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].'" *Id.* Accordingly, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214-15 (citations omitted). Here, Plaintiffs have not alleged that the Trustees possess any funds that rightfully belong to Plaintiffs. The basis for Plaintiffs' claims is not that the Trustees hold particular funds that belong to Plaintiffs, but rather that Plaintiffs are entitled to the benefits they did not receive as a result of the Trustees' actions. Therefore, as in *Knudson*, the Court finds that Plaintiffs do not seek an equitable remedy in their claim for restitution and accordingly dismisses this claim.

30

Plaintiffs' reliance on *Clair* and *Bowerman* suggests that *Knudson* is inapplicable because they seek funds from the Trustees, alleged fiduciaries, for breaches of fiduciary duties. The Supreme Court's reasoning in *Knudson* was broadly phrased, however, and other courts addressing this issue have noted that the statutory language of Section 502(a)(3) "does not condition available remedies on the defendant's identity, but simply states that 'a participant, beneficiary, or fiduciary' may bring a civil action." *Calhoon v. Trans World Airlines, Inc.*, 400 F.3d 593, 598 (8th Cir. 2005). "In short, whether the defendant is a fiduciary or non-fiduciary does not affect what type of relief is available under Section 502(a)(3)." *Street v. Ingalls Mem'l Hosp.*, No. 06-2963, 2007 WL 844619, at *6 (N.D. Ill. Mar. 15, 2007) (rejecting plaintiff's argument that *Knudson* and *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356 (2006), do not apply to cases in which a beneficiary brings forth a breach of fiduciary duty claim pursuant to Section 502(a)(3)).

**B.      Group B Plaintiffs' promissory estoppel claims against the Trustees**

In Count I of their cross claims, Group B Plaintiffs bring a promissory estoppel claim pursuant to Section 502(a)(3) against the Trustees. (B.R. 223, Second Am. Cross Claims at 5-11.) To prevail on an estoppel claim under ERISA, regardless of whether it is construed as "estoppel," "equitable estoppel," or "promissory estoppel," the Seventh Circuit requires that a plaintiff demonstrate extreme circumstances and show: "(1) a knowing misrepresentation; (2) made in writing; (3) reasonable reliance on that misrepresentation by the plaintiff; and (4) that the reliance was to the plaintiff's detriment." *Pearson v. Voith Paper Rolls, Inc.*, 656 F.3d 504, 509 (7th Cir. 2011); *see also Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir. 1999) (noting that the Seventh Circuit's cases "have not employed a consistent nomenclature

31

when speaking of the estoppel-based cause of action that [it] recognized in the ERISA context"). Defendants contend that Group B Plaintiffs' claim should be dismissed for several reasons.

First, Defendants argue that the Seventh Circuit only recognizes promissory estoppel claims in the ERISA context in the case of health and welfare plans. (R. 24, Defs.' Mem. at 10.) Second, Defendants argue that Group B Plaintiffs do not state a promissory estoppel claim under Section 502(a)(3) because they have not identified any writing in which the Trustees made misrepresentations, alleging only that the Trustees repeatedly told them the Notes were adequately secured. (*Id.*) Third, Defendants contend that "[t]he remaining elements are alleged only in the most conclusory terms." (*Id.* at 10-11.)

Regarding Defendants' first argument, the Seventh Circuit has "recognized a form of estoppel as a matter of federal common law in at least some ERISA cases." *Coker*, 165 F.3d at 585. In *Black v. TIC Investment Corporation*, the Seventh Circuit held "that estoppel principles are applicable to claims for benefits under unfunded single-employer welfare benefit plans under ERISA." 900 F.2d 112, 115 (7th Cir. 1990). The court "expressed no opinion as to the application of estoppel principles in other situations." *Id.* In reaching this conclusion, the Seventh Circuit noted at the outset that "estoppel principles generally apply to all legal actions. It is an exception to that general rule to deny the use of the doctrine. The reasons for the general application of estoppel are simple enough–the doctrine prevents a party from benefitting from its own misrepresentations." *Id.* The Seventh Circuit then noted that the reason courts were ordinarily reluctant to apply estoppel principles to ERISA cases was "a concern for the actuarial soundness of the ERISA plan." *Id.* Noting that "[t]here are two types of ERISA plans: pension plans, which are funded and have strict vesting and accrual requirements; and welfare plans . . .

32

which have no such requirements . . [and for which] there is no need for concern about the Plan's

actuarial soundness[,]" the Seventh Circuit then held that estoppel principles were applicable to

"claims for benefits under unfunded single-employer welfare benefit plans[.]" *Id.* at 115. Since

*Black*, the Seventh Circuit has consistently declined to decide whether estoppel might apply to

employer-funded pension plans. *See Pearson*, 656 F.3d at 506 (assuming for purposes of appeal

that a promissory estoppel claim is viable); *Downs v. World Color Press*, 214 F.3d 802, 806 (7th

Cir. 2000) (noting that it was unnecessary in prior cases, and likewise in that case, to express an

opinion on the issue because plaintiffs had failed to establish the elements of estoppel.) As in

*Pearson* and *Downs*, the Court will assume that estoppel is an available remedy and will look to

determine whether Group B Plaintiffs have sufficiently alleged the elements of an estoppel

claim.[11]

In Count I of their Cross Claims, Group B Plaintiffs allege that the Trustees "repeatedly

told [Group B Plaintiffs] that the installment notes were adequately secured[,]" even though the

Trustees "knew, or reasonably should have known, at the time they told [Group B Plaintiffs] that

the notes were secured, that the notes were actually inadequately secured." (B.R. 223, Second

Am. Cross Claims at 6-7.) Group B Plaintiffs further allege that they "detrimentally relied" on

the Trustees' statements "in signing the Escrow Agreement to sell back the company stock

believing that the installment notes would be secured." (*Id.* at 7.) Finally, Group B Plaintiffs

---

[11] The Court declines to decide at this time whether an estoppel claim is viable against a funded, single-employer pension plan, in light of the lack of Seventh Circuit precedent and the parties' cursory briefing on the issue of whether such a claim should be legally cognizable. The Court will decide this issue at summary judgment, if necessary, after a more thorough and thoughtful briefing of the issue.

33

allege that they "lost a majority of their retirement funds because of the misrepresentations made by the [Trustees]." (*Id.* at 8.)

Regarding Defendants' second argument, the Court finds that Plaintiffs have sufficiently alleged that the Trustees made a knowing misrepresentation that the Notes would be adequately secured. With respect to whether the misrepresentation was made in writing, Group B Plaintiffs point to termination letters signed by Albach, as a Trustee, that were sent to some Group B Plaintiffs.[12] (R. 38-6, Termination Ltrs.) These letters explain to the participants that on account of their retirement or termination of employment, they are "entitled to an immediate lump sum distribution of common shares of stock of [Kirk]," and that "under the terms of the ESOP, [they] are required to sell the shares back to Kirk immediately." (*Id.*) Additionally, the letters note that Kirk will pay for the shares in the form of cash and a Note that "will be secured by a Letter of Credit from JP Morgan Chase[.]" (*Id.*)

According to Defendants, "[b]esides discussing obligations that another entity has agreed to take on, these letters simply tell participants what will happen in the future" and "[a] statement that another entity will purchase stock and provide security in the future cannot amount to a

---

[12] As discussed in preceding footnotes, on a motion to dismiss a Court generally may only consider the plaintiff's complaint, and documents attached to such complaints. *See Rosenblaum*, 299 F.3d at 661. There are, however, exceptions to the general rule and courts may consider documents attached to a plaintiff's response where they are referred to in the Plaintiff's complaint and are central to his claim. *See Metz*, 700 F. Supp. 2d at 988. Here, Defendants fail to make any arguments as to why the Termination Letters should be excluded from the Court's consideration. Although Group B Plaintiffs did not refer explicitly to the Termination Letters in their complaint, the Court finds that the Termination Letters fall within the exception, as the viability of Group B Plaintiffs' promissory estoppel claims will turn on whether they can establish that the Trustees made *written* misrepresentations to them.

'knowing misrepresentation' about the security of any particular note not yet in existence." (R. 44, Defs.' Reply at 14.) At this stage of the pleadings, however, the Trustees' intentions as to whether they were going to adequately secure the Notes is not known. Accordingly, viewing the facts in the light most favorable to Plaintiffs, as the Court must do on a motion to dismiss, the Court finds that Group B Plaintiffs have sufficiently alleged that the Trustees made misrepresentations to them in writing.

Finally, as to Defendants' third argument, the Court finds that Plaintiffs have also sufficiently alleged that they reasonably relied on these misrepresentations to their detriment. The Plaintiffs appear to have had no reason to doubt the representations being made by the Trustees, and in deciding to sell their Company Stock back to Kirk, they lost nearly all of their retirement savings, which was clearly to their detriment. Accordingly, the Court declines to dismiss Group B Plaintiffs' claims for promissory estoppel at this time.

### C.     Group B Plaintiffs' claim for equitable enforcement

In Counts II and III, Group B Plaintiffs bring equitable enforcement claims pursuant to Section 502(a)(3) against the Trustees and the Kirk ESOP. (B.R. 223, Second Am. Cross Claims at 8-14.) In Count II, Group B Plaintiffs allege that the Trustees "had a duty to ensure the adequate security of the installment notes and equity should require them to comply with the terms of the Plan and secure the installment notes." (*Id.* at 11.) Group B Plaintiffs request that the Court find the Trustees "liable for inadequately securing the installment notes" and order the Trustees "to adequately secure the remaining balance on the installment notes and resume payment to the [Plaintiffs]." (*Id.*) In Count III, Group B Plaintiffs allege that the Kirk ESOP

"violated the terms of the ESOP Agreement by failing to adequately secure all of the outstanding installment notes" and that Plaintiffs "are entitled to enforce the terms of the ESOP Agreement[.]" (*Id.* at 13-14.) Group B Plaintiffs request that the Court find the Kirk ESOP "liable for inadequately securing the installment notes" and order the Kirk ESOP "to adequately secure the remaining balance on the installment notes." (*Id.* at 14.)

Defendants read Group B Plaintiffs' Section 502(a)(3) claims for "equitable enforcement" as claims for an "injunction compelling the Plan and Trustees to comply with the Plan." (R. 24, Defs.' Mem. at 13-14.) In response, Group B Plaintiffs argue that they are asserting "an action for mandamus not for an injunction." (R. 38, Group B Pls.' Resp. at 11.) Group B Plaintiffs rely on *Mertens* to argue that "a mandamus is a typical equitable remedy available to participants in suits under ERISA § 502(a)(3)." (*Id.* at 12.) In *Mertens*, the Supreme Court mentioned in dicta that "injunction, mandamus, and restitution" were categories of relief that were typically available in equity. *Mertens*, 508 U.S. at 256. Aside from this passing reference, however, the Supreme Court offered no analysis of the circumstances under which a writ of mandamus might be awarded in the ERISA context. Rather, the Supreme Court simply listed mandamus as one of several remedies that were typically available in the courts of equity. The Court's research also reveals that the remedy of mandamus has not been applied in an ERISA case by the Seventh Circuit.

Mandamus actions in district courts are governed by 28 U.S.C. § 1361, which provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Additionally, the Seventh Circuit has explained that

36

"writs of mandamus are generally limited to actions directed at 'any courts appointed under the authority of the United States, or to persons holding office under the authority of the United States, or a State, or an ambassador, or other public minister, or a consul, or vice-consul, as a party.'" *United States v. Wesson*, 33 F.3d 788, 798 (7th Cir. 1994) (affirming district court's conclusion that it lacked authority "to issue a writ of mandamus against a private attorney in a dispute with his client"); *see also Lawrence v. Rivers*, No. 93-0450, 1993 WL 34792, at *1 n.1 (N.D. Ill. Feb. 9, 1993) ("Clearly, a writ of mandamus will not issue against a private actor."). Accordingly, because district courts lack the power to issue writs of mandamus against private actors, the Court finds that Plaintiffs have failed to state a claim upon which relief may be granted and dismisses Group B Plaintiffs' Section 502(a)(3) claims seeking equitable enforcement.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss (R. 23). Specifically, the Court GRANTS the motion as to all of Group A Plaintiffs' cross claims, and as to Group B Plaintiffs' Section 502(a)(2) breach of fiduciary duty claims alleged in Counts VII and VIII, and Group B Plaintiffs' Section 502(a)(3) equitable enforcement claims alleged in Counts II and III. The Court DENIES the motion as to Group B Plaintiffs' Section 502(a)(1)(B) benefits claims in Count V, and Group B Plaintiffs' Section 502(a)(3) promissory estoppel claim in Count I.

The parties are requested to reevaluate their settlement positions in light of this opinion which has substantially narrowed the size and scope of Plaintiffs' claims. The parties are requested to exhaust all efforts to settle the remaining issues in this lawsuit prior to the next

status hearing.  The parties shall appear for a status hearing on March 1, 2012, at 9:45 a.m., to set

a firm litigation schedule.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Date:** February 15, 2012